**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CELLCO PARTNERSHIP**
*d/b/a* **VERIZON WIRELESS,**

                            **Plaintiff,**                  **1:10-cv-581**
                                                                     **(GLS/ATB)**
              **v.**

**TOWN OF COLONIE, NY, et al.,**

                            **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Nixon, Peabody Law Firm | ANDREW C. ROSE, ESQ. |
| 677 Broadway | RUTH E. LEISTENSNIDER, ESQ. |
| 10th Floor | |
| Albany, NY 12207 | |
| **FOR THE DEFENDANTS:** | |
| Town of Colonie | REBEKAH R.N. KENNEDY, ESQ. |
| 534 Loudon Road | |
| Newtownville, NY 12128 | |

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Cellco Partnership, *d/b/a* Verizon Wireless ("Verizon"),

commenced this action against defendant Town of Colonie, New York

("Town"), alleging violations of, *inter alia*, the Telecommunications Act of 1996 ("TCA").  (*See* Am. Compl., Dkt. No. 11.)  Pending is Verizon's motion for summary judgment.  (*See* Dkt. No. 18.)  For the reasons that follow, Verizon's motion is granted.

## II.  Background[1]

On July 11, 2008, Verizon, a federally licenced provider of wireless communications services, commenced a zoning review with the Town to obtain approval for the construction and operation of a wireless communication facility.  (Pl.'s Statement of Material Facts ("SMF") ¶¶ 1-2, Dkt. No. 18, Attach. 59.)  The facility, which "consists of a fully functioning 60 foot bell tower" with "camouflaged" telecommunications equipment on the inside, was to be "located on the property of the Loudonville Presbyterian Church ('Church')."[2]  (*Id.* ¶¶ 4-8.)  Specifically, the bell tower was "designed to match the color and architecture of the Church," and thus, the telecommunications equipment would be invisible to the public.  (*Id.* ¶¶ 4-9.)  Moreover, after Verizon's use ceases, the tower "will remain as a permanent improvement to the Church."  (*Id.* ¶ 9.)  Although the

---

[1] The facts are undisputed unless otherwise noted.

[2] For the purpose of clarity, the wireless communications facility that is the subject of this action is referred to as the "bell tower."

2

Church welcomed what it called "an enhancement to [its] building," (*see* Dkt. No. 18, Attach. 12 at 52:1-4), some of the Town's residents were not as receptive.

   1.   *Verizon's Application to the Town's Zoning Board*

As part of its application to the Town's Zoning Board of Appeals ("ZBA") for a use and height variance,[3] Verizon conducted a comprehensive study that found:[4] (1) the bell tower "is needed in order to fill a significant gap in existing Verizon Wireless system coverage"; (2) no "feasible or less intrusive sites" exist to adequately address the coverage gap; (3) the bell tower complies with the applicable "exposure limits and guidelines adopted by the Federal Communications Commission ("FCC") governing human exposure to radio frequency electromagnetic fields"; and (4) the bell tower will not be visible from any of the Town's historic districts.[5]

---

   [3] The use and height variance was necessary because the Church's property is in a "Single-Family Residential" ("SFR") zone, and a 60-foot telecommunications tower is neither listed as an allowable use in, nor within the 40-foot height limitation for, a SFR zone. (Dkt. No. 18, Attach. 1 ¶ 31.) While Verizon completed the requisite variance application, it should be noted that a church bell tower is not only an exception to the 40-foot height restriction, but it is also a permissible use in the Town's SFR zone. (Pl.'s SMF ¶¶ 16-17.)

   [4] Though summarized in the court's recitation of the facts, Verizon's analysis is thoroughly discussed in the affidavits of Joseph Sorrentino, a Radio Frequency ("RF") Design Engineer for Verizon, and Michael E. Cusack, Esq., Verizon's attorney during the zoning process. (*See* Dkt. No. 18, Attach. 57 ¶¶ 1, 3-6; Dkt. No. 18, Attach. 1 ¶¶ 1, 33-40.)

   [5] Despite the Town's unwillingness to admit this fact, (*see* Dkt. No. 24, Attach. 3 ¶ 20), Verizon submitted a letter from the New York State Office of Parks, Recreation and Historic

3

(Pl.'s SMF ¶¶ 10-11, 13, 19-20.)  In addition to the application materials submitted by Verizon, the ZBA received input from several independent sources, all of which corroborated Verizon's analysis.  (*See generally id.* ¶¶ 21-36.)

For example, the Town's Planning and Economic Development Department ("PEDD") reported that the bell tower would "not have a significant effect on the environment."  (*Id.* ¶ 21.)  Furthermore, following a balloon test[6]—which was conducted while the leaves were off the deciduous trees on the site[7]—both Tectonic and C.T. Male, Verizon and the Town's respective engineering consultants, agreed "that the tower is not visible unless you are standing right beneath it."  (*Id.* ¶¶ 24-25, 27, 33; *see also* Dkt. No. 18, Attach. 12 at 21:16-19.)  Finally, C.T. Male, which completed an independent review of Verizon's ZBA application, also found that Verizon "provided the information required by the . . . Town Code to demonstrate that the tower is needed . . . . [and] the proposed site

---

Preservation ("SHPO") which states: "[I]t is the SHPO's opinion that your project will have No Effect upon cultural resources in or eligible for inclusion in the Nation Registers of Historic Places."  (Dkt. No. 18, Attach. 37 at 5.)

[6] The balloon test was commissioned to "evaluate the visual impact" of the tower, and was conducted in coordination with both the ZBA and Planning Board.  (Pl.'s SMF ¶ 24.)

[7] The proposed site for the bell tower "is densely treed," with numerous 60-65 foot coniferous or non-deciduous trees.  (Pl.'s SMF ¶ 26.)

4

integrates well with [Verizon's] other telecommunications tower sites and solves some of their coverage objectives." (Pl.'s SMF ¶¶ 30-31.)

After considering Verizon's submissions, the recommendations of the PEDD and C.T. Male, and the live presentations at its June 18, 2009 public hearing, the ZBA unanimously approved Verizon's application and granted it an unconditional use and height variance. (*Id.* ¶ 36.) As no appeals were registered to the ZBA's decision, Verizon made its initial filing with the Town's Planning Board for approval of its Minor Site Plan Review ("Minor SPR") on June 25, 2009. (*Id.* ¶¶ 40-41.) While the Town's Land Use Law permits the PEDD to render a decision on a Minor SPR, it opted not to, and referred Verizon's application to the full Planning Board. (*Id.* ¶ 42.)

*2. The Public Opposition to the Bell Tower*

Despite the Church's enthusiasm for, and the ZBA's approval of, the bell tower, residents of the Town mounted a campaign to block its final approval. (*See id.* ¶¶ 35, 75, 79, 80-85, 100-01, 107-08.) This opposition was largely led by Gary Mittleman, who, at the ZBA's June meeting, declared "progress is great except when it's in my own backyard." (*Id.* ¶ 35.) But, Mittleman's opposition did not cease there. By the time the Planning Board scheduled Verizon's final hearing in May 2010, he, and his

5

followers, were responsible for: (1) an email listserv dedicated to raising opposition; (2) incendiary letters to the Church in which Mittleman threatened to organize televised protests during Sunday services; (3) a "notice of intended legal action regarding health traumas" accusing Verizon and the Church of "reckless endangerment and depraved indifference"; (4) a request for the installation of RF monitoring stations; (5) extensive media coverage of the issue, including the televised delivery of petitions to the PEDD; and (6) the creation of a community organization called S.A.F.E. (School Areas Free of Emissions).  (*See id.* ¶¶ 75, 79, 80-85, 100.) Indeed, members of S.A.F.E. filed a petition[8] and provided extensive testimony at the final Planning Board hearing that focused on the perceived adverse consequences of the bell tower.  (*See id.* ¶¶ 100, 107.)  In sum, this opposition—albeit concerned with more than just health risks—is best described by Mittleman's letter of March 14, 2010, in which he wrote that the community was "'outrage[d]' that 'a tower like this can possibly be

---

[8] The petition includes the following: (1) "scientific studies" on the consequences of human exposure to RF emissions; (2) a letter from an elementary school parent "questioning whether to send her child to the" nearby school; (3) a "position statement" by the PTA expressing their support for legislation on RF emissions; (4) a discussion of "RF impacts on vegetation"; and (5) a "Mother's view" suggesting "that RF transmissions are harmful to the 'safe haven' enjoyed by nine children who live within 'a short distance of the church.'"  (Pl.'s SMF ¶ 108.)  Furthermore, the petition references a "'Bond Study,' a 2002 study done on residential property in Auckland, New Zealand," for the proposition that the bell tower would cause a decrease in property values.  (*Id.* ¶ 109.)

6

constructed in the midst of a residential neighborhood near an elementary school.'" (*Id.* ¶ 81.)

   3.   *The Planning Board's Consideration of the Bell Tower*

After submitting its Minor SPR application to the PEDD in August 2009, Verizon received a "Notice of Complete" application on December 21, 2009. (*Id.* ¶¶ 45, 48.) By this date, all of "the involved Town departments had reviewed [Verizon's Minor SPR application] and expressed 'satisfaction' with or 'no objection' to it." (*Id.* ¶ 47.) In fact, after reviewing the application, the PEDD recommended "a finding of no significant environmental impact and issuance of final approval." (*Id.* ¶ 50.) Accordingly, the PEDD notified the Planning Board of the ZBA's grant of "an unconditional area and use variance," and scheduled Verizon "for a January 12, 2010 appearance" in front of it. (*Id.* ¶¶ 50-52.)

Though the Planning Board discussed Verizon's Minor SPR application at its January 12 meeting,[9] it requested the full application from the PEDD and thus, deferred final action until a later meeting. (*Id.* ¶¶ 53, 60.) The Planning Board was provided with the requested materials on

---

   [9] The discussion of the Minor SPR application included a presentation by Verizon that covered: the design, and need for, the bell tower; the visual impact of the tower; the Church's desire for it; and the findings of the Town's engineer, C.T. Male. (Pl.'s SMF ¶ 56.)

7

February 1, 2010, and Verizon was placed on the agenda for the February 9 meeting. (*Id.* ¶¶ 61-62.)

Again, Verizon presented a comprehensive overview of the project, highlighting the bell tower's "lack of visual impact," as well as the steps it took to ensure the tower would have "no effect" on the Town's historic resources. (*Id.* ¶ 64.) However, the Planning Board remained unconvinced, and openly expressed its concerns with the tower.[10] (*See id.* ¶¶ 65-69.) While it acknowledged it lacked the authority to block the tower,[11] the Planning Board requested additional information, and asked Verizon to reappear at its March 9, 2010 hearing. (*Id.* ¶ 73.)

In response to the Planning Board's request, Verizon revised its proposal to further disguise the tower. (*Id.* ¶ 76.) To this end, C.T. Male conducted "a detailed environmental, engineering and planning" review, and articulated several design comments to reduce visibility and "effect compliance with the [Town's] Land Use Law." (*Id.* ¶¶ 87, 91.) On April 6,

---

[10] Predominantly, the Planning Board's comments echoed those made by Mittleman's opposition group with respect to the health effects of RF emissions. (Pl.'s SMF ¶¶ 68-70.)

[11] Notably, the Planning Board's Chairman stated that because the ZBA granted the variance, "the 'Planning Board has no recourse' and would have 'no leg to stand on' if it voted down" Verizon's Minor SPR application. (Pl.'s SMF ¶ 65.) He further admitted that while he was "very upset" that the ZBA granted the variance, the Planning Board could only decide the design, and location of the tower on the site. (*Id.* ¶¶ 66-67.)

2010, Verizon pledged to implement C.T. Male's comments, and two days later, C.T. Male confirmed that it was compliant with the applicable Town Land Use Law. (*Id.* ¶¶ 88, 90.) The suggested modifications, as well as an updated compliance report on RF exposure, were incorporated into Verizon's final submission to the Planning Board on May 18, 2010. (*See id.* ¶¶ 94-97.) Seven days later, the Planning Board finally voted on Verizon's Minor SPR application. (*Id.* ¶¶ 103, 113.)

Unsurprisingly, given that one of its member expressed his intent to vote against Verizon's application two months earlier, the Planning Board voted to deny the application. (*Id.* ¶¶ 104, 112.) Although it promised to issue a written decision within a week—as it is required to do under New York Town Law § 274-a(8)—the Planning Board did not file its decision until July 29, 2010, over two months after the vote. (*Id.* ¶¶ 114-15.) The decision, which repeatedly cites to the S.A.F.E. petition,[12] concludes that "the proposed cellular tower would be a non-residential, commercial use of the property," and thus, "would fundamentally change the residential nature of the subject property, as well as . . . invite other non-residential and/or

---

[12] It should be noted that Verizon was neither provided a copy of S.A.F.E.'s petition in advance of the May 25 hearing, nor given the opportunity to respond to it. (Pl.'s SMF ¶¶ 100, 102, 111.)

commercial uses . . . further jeopardizing the residential and historic character of this portion of the Town." (Dkt. No. 18, Attach. 44 at 14.)

### III. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). When evaluating the material facts, the court "construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in [its] favor." *Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir. 2010). Thus, the movant must demonstrate the absence of genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999), a burden it can meet "if [it] can point to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

If the movant satisfies its burden, the nonmoving party must offer specific evidence showing that a genuine issue of material fact warrants a

10

trial. *See Celotex*, 477 U.S. at 324. "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). Moreover, material disputes must be based on specific facts as reflected in the adverse party's response, by affidavits or as otherwise authorized by Rule 56, *see St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000), and affidavits must be based on personal knowledge, *see Harriscom Svenska, AB v. Harris Corp.*, 3 F.3d 576, 581 (2d Cir. 1993). The bald assertion of some alleged factual dispute will not defeat a properly supported motion. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (citation omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Naturally, reasonable inferences may defeat a summary judgment motion, but only when they are supported by affirmative facts and relevant, admissible evidence. *See* Fed. R. Civ. P. 56(c)(4); *Spinelli v. City of New York*, 579 F.3d 160, 166-67 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

11

*Anderson*, 477 U.S. at 248.

## IV. Discussion

Verizon argues that the Planning Board's denial "was a gross abuse of its authority and a violation of the TCA." (Dkt. No. 18, Attach. 58 at 17.) Specifically, it avers that: (1) the denial "prohibits the provision of personal wireless services in violation of 47 U.S.C. § 322(c)(7)(B)(i)(II)"; (2) the Town violated both state and federal law because it failed to consider Verizon's application within a reasonable time; (3) the Planning Board's denial was not based on substantial evidence as required by 47 U.S.C. § 322(c)(7)(B)(iii); and (4) the stated rationale for denying the application was "a pretext for federally-preempted concerns about" RF emissions.[13] (*See id.* at 18-41.) To remedy these violations, Verizon seeks a permanent injunction directing the immediate approval of its Minor SPR application and the issuance of all necessary permits. (*Id.* at 41-44.) In response, the Town rebuts each of Verizon's substantive arguments, but fails to address

---

[13] Although valid, Verizon's first, second, and fourth arguments will not be addressed as they, standing alone, are inconsequential in light of the Planning Board's decision. While germane in a case where a wireless provider is denied on all fronts, this case presents an unusual set of circumstances because the Planning Board's decision contravenes the findings of all of the other Town departments that considered Verizon's application. As such, the court focuses its discussion on the dispositive issue, that is, the bases of the Planning Board's denial.

Verizon's request for injunctive relief.[14] (*See generally* Dkt. No. 25.) While the court is mindful of the Town's underlying concerns, the law, as applied to the record in this case, overwhelmingly supports Verizon's position.

In "an omnibus overhaul of the federal regulation of communications companies," Congress enacted the TCA, a de-regulatory measure which was "designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services by opening all telecommunications markets to competition." *Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 637 (2d Cir. 1999) (internal citations and quotations omitted). In so doing, Congress endeavored to reduce "the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 115 (2005). Accordingly, the TCA was amended to include section 332(c)(7), which "preserved the authority of state and local governments over zoning and land use issues, but imposed

---

[14] The Town further argues Verizon failed to prove a coverage gap existed, and that the bell tower was the least intrusive means to remedy the gap. (*See* Dkt. No. 25 at 3-6.) However, these assertions contradict the undisputed findings of the PEDD, C.T. Male and the ZBA, all of whom reviewed Verizon's application on behalf of the Town. (*See* Pl.'s SMF ¶¶ 29-30, 36.) Essentially, the Town now seeks to disavow its own findings given that, as defense counsel noted, the individual boards and departments are "just administrative arms of [the] Town." (Dkt. No. 25 at 2.) Thus, the Town's own determination on the need for, and location of, the bell tower are adopted; its contradictory assertions are meritless.

13

limitations on that authority." *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 101 (2d Cir. 2010) (citing 47 U.S.C. § 332(c)(7)).

Relevantly, section 332(c)(7)(B)(iii) requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). The substantial evidence standard demands "less than a preponderance, but more than a scintilla of evidence"; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999) (quoting *Universal Camera v. NLRB*, 340 U.S. 474, 477 (1951)).

In determining whether a denial was adequately substantiated, the court "must view the record in its entirety, including evidence opposed to the [Planning] Board's view," but "may neither engage in [its] own fact-finding nor supplant the Town Board's reasonable determinations." *N.Y. SMSA Ltd. P'ship v. Floral Park Bd. of Trs.*, No. 09-cv-2385, 2011 WL 4375668, at *7 (E.D.N.Y. Sept. 19, 2011) (citing *Oyster Bay*, 166 F.3d at 494). A denial should only be overturned where, as here, the "record is

devoid of substantial evidence to support [it]." *Floral Park*, 2011 WL 4375668, at *8 (citing *Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 555 (S.D.N.Y. 2009)).

In the instant case, the court concludes the Planning Board's denial was not only unsubstantiated, but also wholly incompatible with the findings of Verizon's experts, the ZBA, the PEDD and C.T. Male. (*See, e.g.,* Pl.'s SMF ¶¶ 36, 47, 50, 90.) Although the Planning Board took five months to review the Minor SPR application, and another two months to craft its written decision, the stated bases for the denial are, simply put, absurd.[15] (*See id.* ¶¶ 53, 115.)

First, in spite of the simulations Verizon submitted—which clearly depict a bell tower—the Planning Board stated it was "unsatisfied" that the "proposed cellular tower will not be visually apparent to the surrounding area." (*See* Dkt. No. 18, Attach. 36 at 4; Dkt. No. 18, Attach. 44 at 14.) However, this conclusion contradicts the following undisputed facts: (1) the

---

[15] Indeed, it is readily apparent from the Planning Board's repeated citation to S.A.F.E.'s petition, and the comments of its members at the February and May hearings, that the underlying basis for denying Verizon's application was concerns regarding RF emissions. (Pl.'s SMF ¶¶ 68-70; Dkt. No. 18, Attach. 44 at 14.) Even if this was a permissible consideration, which it clearly was not, Verizon submitted an RF emissions report demonstrating that it complied with the applicable FCC guidelines. (Pl.'s SMF ¶ 96); *see* 47 U.S.C. § 332(c)(7)(B)(iv).

15

bell tower was "designed to match the color and architecture of the Church"; (2) the telecommunications equipment inside will be "completely camouflaged"; and (3) the balloon test, as well as the reports of Tectonic and C.T. Male, confirm that "that the bell tower is not visible unless you are standing right beneath it."[16] (Pl.'s SMF ¶¶ 4-9, 24-33.) Thus, the Planning Board's concerns regarding the public's ability to view a "cellular tower" are meritless.

Likewise, the Planning Board's second basis—which is essentially that a "cellular tower" is a non-conforming use in a SFR zone—is equally unavailing because the ZBA's contrary determination was conclusive. (*See* Dkt. No. 18, Attach. 44 at 14); *see also Gershowitz v. Planning Bd. of Brookhaven*, 52 N.Y.2d 763, 765 (1980) (noting where a use is approved by the ZBA, the Planning Board is "without power to disapprove [the] petitioner's site plan on the ground that petitioner's use violated the" Town Code); *Lodge Hotel, Inc. v. Town of Erwin Planning Bd.*, 62 A.D.3d 1257, 1258-59 (4th Dep't 2009) (stating that with respect to the conformity of use, the Planning Board was "bound" by the Zoning Board's grant of a

---

[16] The Planning Board's dissatisfaction with the balloon test—which rests in part on its concerns that seasonal changes will effect the visibility of the bell tower—is also untenable since the test was conducted while the leaves were off the deciduous trees on the site. (*See* Dkt. No. 18, Attach. 44 at 14; Pl.'s SMF ¶ 25.)

16

variance). Here, the Planning Board conceded its control was limited to deciding the design and location of the bell tower on the site, and that it would have "no leg to stand on if it voted down" Verizon's application. (*Id.* ¶ 65-66.) It follows that the denial cannot "stand" on this ground either.

Finally, the Planning Board's fear that the bell tower will impact the historic character of the Town is unfounded in light of the SHPO's letter, which states: " [the] project will have No Effect upon cultural resources in or eligible for inclusion in the National Registers of Historic Places." (Dkt. No. 18, Attach. 44 at 14; Dkt. No. 18, Attach. 37 at 5.)

In sum, the record is—with the exception of the concerns expressed by the Town's residents—devoid of any evidence to support the Planning Board's denial of Verizon's Minor SPR application. Because Verizon satisfied its burden under the TCA, the Town was required to approve the Minor SPR application, and its baseless refusal to do so constitutes a violation of the TCA.[17]

To this end, the court concludes that "further review by defendants would serve no useful purpose and would greatly prejudice [Verizon] by

---

[17] Since Verizon is entitled to relief under the TCA, consideration of its Article 78 claim is unnecessary.

17

further delaying its ability to" address a significant gap in its coverage, "and that immediate injunctive relief is the appropriate remedy for [defendants'] violation of the TCA." *MetroPCS N.Y., LLC v. Village of East Hills*, 764 F. Supp. 2d 441, 457 (E.D.N.Y. 2011) (internal citations and quotations omitted).  Accordingly, the Town shall, within thirty (30) days of this order, approve Verizon's Minor SPR application, and grant all permits, licences and/or approvals necessary to effectuate the construction of the bell tower.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Verizon's motion for summary judgment (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that the Planning Board's July 29, 2010 decision is **VACATED**; and it is further

**ORDERED** that the Town shall, within thirty (30) days of this order, approve Verizon's Minor SPR application, and grant all permits, licences and/or approvals necessary to effectuate the construction of the bell tower; and it is further

**ORDERED** that Verizon will update the court via letter filing when the Town has complied with the court's order; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that if the Town fails to comply with the court's order within thirty (30) days, Verizon may seek to either reopen the case, and/or sanctions against the Town; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 28, 2011
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge